Determination of respondent New York City Housing Authority (NYCHA), dated March 20, 2013, which, after a hearing, terminated petitioner’s tenancy, unanimously modified, on the law, to the extent of vacating the penalty and remanding the matter to NYCHA for consideration of a new penalty in accordance with this order, and this proceeding brought pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, New York County [Shlomo Hagler, J.], entered Jan. 31, 2014), otherwise disposed of by confirming the remainder of the determination, without costs.
The penalty of terminating petitioner’s tenancy, under the circumstances of this case, shocks our sense of fairness, and should be vacated (Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County, 34 NY2d 222, 237 [1974]). Notwithstanding that there was substantial evidence supporting the hearing officer’s finding that petitioner violated a stipulation made over 17 years ago, in which he agreed to exclude Tanya Hall from *572 the apartment, the remedy of terminating petitioner’s tenancy failed to take into account substantially changed circumstances. These changed circumstances were set out in petitioner’s pending application for relief from the condition of exclusion. Because petitioner’s undecided application presented a strong basis for removing the exclusion against Ms. Hall, termination of his long term tenancy based on the violation of the exclusion provision, without considering the merits of whether the exclusion should still be in place, is manifestly unfair.
Petitioner is a resident of public housing for over 30 years. Tanya Hall is petitioner’s long time girlfriend. Seventeen years ago she was staying with petitioner in the apartment, along with her then 16 year old son, Angel. At that time Angel vandalized several coin operated washers and dryers in the NYCHA building, resulting in NYCHA bringing charges to terminate petitioner’s lease as a nondesirable tenant. In resolution of those charges, petitioner signed a stipulation dated November 19, 1998, agreeing to permanently exclude Angel and Ms. Hall from visiting him at, or living in, his apartment. Although only Angel was claimed to have committed the undesirable acts, Ms. Hall, who was responsible for Angel’s care and custody at that time, was also excluded. A further condition of the stipulation was that NYCHA investigators could make unannounced visits to his apartment to confirm petitioner’s compliance with the conditions. Any refusal to allow such entry is, by the express terms of the stipulation, a violation. Petitioner was placed on probation for two years and agreed to downsize into a smaller apartment. The 1998 stipulation expressly provides that the permanent exclusion lasts beyond the probation period. The condition of unannounced visits, however, does not state whether it is only while petitioner is on probation, or nondurational. On January 29, 1999, NYCHA approved the stipulation.
There is simply no evidence, and no finding was ever made, that since the stipulation Angel ever again resided in or even visited the apartment. Now in his 30’s, Angel has a family of his own, and he does not intend to ever return to the apartment. Following the 1998 stipulation, Ms. Hall moved immediately to Louisiana to live with her (now deceased) mother. It is, however, undisputed that Ms. Hall and petitioner have maintained an intimate relationship over the years, during which she has intermittently stayed with him. It is also undisputed that in the intervening years Ms. Hall has grappled with serious medical issues and homelessness. During her *573 periods of homelessness, she has left her personal belongings in petitioner’s apartment. Ms. Hall, now in her 50’s, is wheelchair-bound and frail, and suffers from a multitude of chronic, debilitating medical conditions. She depends on petitioner to help her with many basic needs, including making medical decisions for her.
In 2003, NYCHA investigators made an unannounced visit to petitioner’s apartment and were let in by Ms. Hall. Charges were brought against petitioner and an administrative hearing was held. The hearing officer, noting Ms. Hall’s frail health and mobility impairment, continued the permanent exclusion condition of the 1998 stipulation but did not order the sanction of eviction, allowing petitioner “a final opportunity to save his home in public housing.”
In 2004, petitioner failed to allow NYCHA investigators into his apartment on two separate occasions. Charges were brought against him and after an administrative hearing at which petitioner testified that he had not been in contact with Angel since 1998, the hearing officer continued the 1998 stipulation and imposed an additional one year of probation on him.
In 2006, petitioner was again charged with violating the 1998 stipulation and terms of his probationary period by refusing to let NYCHA investigators into the apartment. After yet another hearing, at which it was found that petitioner had violated the 1998 stipulation by failing to grant NYCHA investigators entry into his apartment, the hearing officer nonetheless observed that “no wrong-doing by Tanya Hall was ever alleged, and there is no evidence that Tanya uses the apartment for anything except storage.” Petitioner was placed on another one-year probationary period.
Charges were filed against him in 2011 for the same reason and were resolved by stipulation dated January 12, 2012. Once again he was placed on probation for a one-year period. During the most recent probationary period, NYCHA claims its investigators were denied access to the apartment, resulting in the current charges.
The charges underlying this proceeding are that petitioner violated the terms of his probation by allowing “Tanya Hall and Angel [surname deleted] to take up residence in your Authority apartment since September 2012 without obtaining prior written consent of your Development’s Housing Manager, as required.” These charges were set forth in NYCHA’s October 23, 2012 notification of proposed termination of tenancy. After receiving the October 23, 2012 notification of charges, petitioner sent NYCHA a written request, dated November 11, 2012, seek *574 ing relief from the permanent exclusion requirement on the basis that Ms. Hall, who has been his girlfriend for 30 years, is ill, he has never been arrested, he has held stable employment throughout his tenancy, and immediately “barred [Angel] from the premises in 1999.” Petitioner’s written application only sought relief from the condition involving Ms. Hall’s exclusion from his apartment.
A NYCHA tenant can seek relief from the condition of permanent exclusion by following the procedures set forth in paragraph 24 of NYCHA’s termination of tenancy procedures: “The tenant found eligible [for continued tenancy], subject to permanent exclusion of one or more persons in the household may apply for removal of the condition at any time a substantial change has occurred bearing on the need for such condition for eligibility. The tenant’s application shall be in writing, addressed to the Tenancy Administrator, who shall submit such application to the Hearing Officer. The Hearing Officer may in his/her discretion:
“(a) Continue the condition unchanged, or
“(b) Remove the condition of permanent exclusion of one or more persons in the household from the tenant’s status of eligible.”
The evidence before the hearing officer in this matter included petitioner’s letter application seeking removal of the condition excluding Ms. Hall. There was also a letter from Angel stating that he had not resided with petitioner or his mother since 1999 because he “moved on,” and a letter from Ms. Hall’s doctor. Ms. Hall’s physician describes her extremely poor health condition and opines that she “has limited ambulatory abilities and requires stable housing and support from [petitioner] in order for her to attend all of her medical appointments.” Petitioner and Ms. Hall were among the witnesses who testified.
The hearing officer sustained the charges, finding that Ms. Hall resided in the apartment in violation of the 1998 stipulation. No findings were made as to the remaining charges. In rendering her determination, the hearing officer observed that despite having “ample opportunity over the last thirteen years to seek [removal] of the condition of permanent exclusion against Tanya Hall” petitioner had not done so. Notwithstanding that the NYCHA rule provides that an application to remove a condition can be made “at any time,” the hearing officer did not address the merits of petitioner’s application to remove the condition, despite his specific request that she do so.
*575 As to the remedy, the hearing officer observed that “petitioner cares deeply for Tanya Hall and wants her to continue residing with him im the subject apartment.” Based upon this observation, the hearing officer concluded that the remedies of “[p]robation and permanent exclusion are no longer meaningful or effective deterrents.” She then granted NYCHA the right to terminate petitioner’s tenancy.
As an initial matter we find that this matter was not properly transferred to this Court pursuant to CPLR 7804 (g), as the petition does not raise an issue of substantial evidence. In the alternative, as a matter of judicial economy, we retain jurisdiction to dispose of all issues raised in the proceeding (see CPLR 7804 [g]; see also Matter of Trustees of Columbia Univ. v City of New York, 110 AD3d 467, 467 [1st Dept 2013]). We reject petitioner’s argument that he was not given a fair hearing based on NYCHA’s late production of documents. We also find that there is adequate support for the hearing officer’s conclusion that petitioner violated the 1998 stipulation by permitting Ms. Hall to stay with him in the apartment during the most recent probationary period (300 Gramatan Ave. Assoc. v State Div. of Human Rights, 45 NY2d 176, 179-180 [1978]).
We differ with the hearing officer only insofar as she imposed the remedy of eviction for this violation without considering the merits of petitioner’s request to be relieved from the condition excluding Ms. Hall. Our review of the penalty is limited to whether it constitutes an abuse of discretion as a matter of law (Matter of Kelly v Safir, 96 NY2d 32, 38 [2001]). A penalty must be upheld unless it is “so disproportionate to the offense as to be shocking to one’s sense of fairness” (Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County, 34 NY2d 222, 237 [1974]). While the standard of review of an administrative penalty is a formidable one, it is not insurmountable (see Matter of Wise v Morales, 85 AD3d 571 [1st Dept 2011], lv denied 18 NY3d 808 [2012]; Matter of Davis v New York City Dept. of Hous. Preserv. & Dev., 58 AD3d 418 [1st Dept 2009]; Matter of Vazquez v New York City Hous. Auth. [Robert Fulton Houses], 57 AD3d 360 [1st Dept 2008]). Were it otherwise, the right of review would be illusory.
We recognize that stipulations requiring the exclusion of an objectionable resident from public housing serve a salutary purpose of protecting the community (see Matter of Horne v New York City Hous. Auth., 113 AD3d 575 [1st Dept 2014]; Matter of Gibbs v New York City Hous. Auth., 82 AD3d 412 [1st Dept 2011]). NYCHA’s own rules, however, reflect that *576 substantially changed circumstances may ameliorate the community’s need for exclusion.
On this record it is undisputed that neither petitioner nor Ms. Hall have ever been accused of directly doing anything that would qualify them as undesirable. The stipulation excluding Ms. Hall was based upon the undesirable conduct of her teenage son, Angel, over 17 years ago. Petitioner has fully complied with that portion of the stipulation requiring him to exclude Angel from the apartment. Although Ms. Hall was responsible for Angel’s care and custody when he was a minor at the time of the 1998 stipulation, she has had no such responsibility for him for many years. It is highly questionable whether the 1998 stipulation, to the extent it excludes Ms. Hall, still serves any practical purpose and the stipulation should not be blindly enforced without consideration of the pending application for relief from that condition of the stipulation (see Matter of Perez v Rhea, 20 NY3d 399, 405 [2013]).
We do not condone petitioner’s decision to simply violate the stipulation and not seek relief from the condition of exclusion sooner, and believe that his conduct warrants some degree of sanction. NYCHA’s own rules, however, impose no time restriction on when to make an application for relief from an exclusion requirement of a stipulation. It is manifestly unjust and simply makes no sense to impose the most serious remedy of eviction upon petitioner for failing to exclude Ms. Hall from the apartment, if there is merit to his application that substantially changed circumstances no longer warrant her exclusion. We therefore remand this matter to respondent agency for reconsideration of the penalty.
Concur — Andrias, J.P., Moskowitz, DeGrasse, Gische and Kapnick, JJ.